BIRDSALL v. WHEELER et al.

(Supreme Court, Appellate Division, Third Department.   June 28, 1901.)

1. BILLS AND NOTES—USURY.
   Where notes were made to be discounted at a bank at the legal rate, the payment of a portion of the proceeds of the discount to an accommodation indorser to compensate him for the indorsement does not make the notes usurious.

2. SAME—MORTGAGES—CONSIDERATION.
   When a mortgage is given in part to secure the notes made by the partner of the mortgagor for the price of the partnership property, and secured by lien thereon, which the holder threatens to immediately enforce unless the notes are further secured, there is sufficient consideration for such mortgage.

3. SAME—ILLEGAL PURPOSE—NOTICE.
   Where notes made to be discounted at a certain bank are signed at request of the makers by accommodation indorsers, such notes are not invalid because the proceeds are to be used for gambling purposes, where the bank has no knowledge of such purpose, though such indorsers have notice.

   Parker, P. J., dissenting.

Appeal from special term.

Action by Wilbert S. Birdsall against John P. Wheeler and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The action was brought to enjoin the defendants in a proceeding to foreclose a mortgage upon realty by advertisement, and to declare the mortgage and bond given therewith void; the alleged grounds being that the mortgage and bond were usurious, were given without consideration, and were given to secure the payment of a loan of money to be used in gambling, and known to the mortgagees that such was the purpose of the loan. An injunction pendente lite was granted. The dismissal of the complaint was ordered when plaintiff rested his case on the ground that he had failed to furnish sufficient proof to entitle him to the relief sought. The further material facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Perkins & Parsons, for appellant.
Wales & Wilbur, for respondents Wheeler & Weir.
Williams & Stewart, for respondent First Nat. Bank of Binghamton.

KELLOGG, J.   The alleged usury relates to the loan of the money evidenced by the promissory notes mentioned in the mortgage.   It appears that the defendant Weir retained from the avails of the three notes dated December 18, 1896, aggregating $850, the sum of $100, and also retained from the avails of the $800 note, dated February 1, 1897, the sum of $100.   Had Weir been the person who loaned the money, this, together with what was at the time said between the parties, might properly be construed as an agreement to pay more than lawful interest.   But it appears clearly from the testimony that Weir's relation to the notes was that of accommodation indorser only, and that, for the sum mentioned, he, at the

instance of the makers of the notes, indorsed them to enable them to be negotiated at the First National Bank of Binghamton. Weir loaned no money on the notes. The notes had their first legal inception when negotiated at the bank, and the bank loaned the money at the legal rate, so far as appears. This transaction was, therefore, not usurious, nor was either of the notes tainted with usury. The first three notes mentioned in the mortgage are dated December 18, 1896, and were negotiated at the bank on December 19, 1896; and after that, on the same day, the money was delivered to those seeking the loan. The note of $800 is dated February 1, 1897,—the date of the mortgage,—and was on the same day negotiated at the First National Bank of Binghamton, and the money there obtained was delivered to the party seeking the loan. The evidence seems to be undisputed that all these notes were made with the understanding of all the parties that the loan was to be made of the bank, and to make the notes there negotiable the defendant Wheeler was to be first indorser and Weir second indorser, and that Weir was to be paid for his indorsement. This disposes of the charge of usury made in the complaint.

The allegation of lack of consideration seems to stand upon the following facts, as established by the proof: The $800 note mentioned in the mortgage, and for the payment of which the mortgage was in part given to secure, is a note made by the mortgagor at the date of the mortgage, and the mortgage was made to follow the note into any hands it might afterwards pass. On the day of the execution of the note and mortgage both note and mortgage, as contemplated by the parties, passed to the First National Bank of Binghamton. This bank loaned to the maker of the note and mortgage the $800 on these instruments. To that extent there can be no question of consideration for the mortgage. The mortgagor does not appear to be maker or indorser of either of the three other notes aggregating $850, mentioned in the mortgage; but an examination of the record discloses that at the time of executing the mortgage the mortgagor did have indirectly a personal and financial interest in the payment of these notes, and had at the time of their inception pledged his individual property to secure their payment. Birdsall, the mortgagor, and McCallum, one of the makers of these three notes, were partners conducting the business of the Manhattan Club at Scranton, Pa. They jointly were the owners of the fixtures, furniture, and equipment of the club, which they had purchased from one Morey shortly before the date of these notes, and had paid or agreed to pay therefor $1,000. To obtain money in part to complete the payment for this personal property, these notes were made, and the indorsements thereon of Wheeler and Weir secured; but such indorsement was given on the agreement of Birdsall and McCallum to transfer to Wheeler and one Mercereau the title to this property, and before the avails of the notes were paid over a bill of sale absolute on its face was made to Wheeler and Mercereau, and they gave back to Birdsall and McCallum a written promise to surrender a half interest in the property upon the payment of these three notes. At the time of the execution of the mortgage, neither

of these notes had been paid, but were held by the First National Bank of Binghamton, which became the owner at their inception, with the indorsements thereon of Wheeler and Weir; and at the time the mortgage was executed, and prior thereto, it was the declared purpose of Wheeler to take possession of the personal property, as he lawfully might, and thereby seriously interrupt the business at the Manhattan Club, conducted by the mortgagor, Birdsall, and his partner, McCallum. The prevention of such action by Wheeler, and his express or implied agreement to delay such action in case the mortgage was executed, appear to have been largely the consideration moving Birdsall to execute the mortgage securing also the three notes. On execution of the mortgage the possession of the personal property was allowed to remain in charge of and to be used by Birdsall and McCallum as theretofore used. There seems, therefore, to have been sufficient consideration in law, moving to the mortgagor, to support the mortgage as to these three notes.

As to the remaining alleged ground of invalidity of the mortgage, to wit, that the money was borrowed to be used in aid of gambling games to be conducted by Birdsall and McCallum at the Manhattan Club in Scranton, Pa., in violation of the statutory prohibition of that state, the proof shows that the residence and domicile of all the parties to the transaction was then and is now in the state of New York; that the transactions touching the execution and negotiation of the mortgage and all the notes occurred in this state, and the mortgaged property is situated here; that there is no proof that Wheeler, Weir, or the First National Bank of Binghamton had any actual knowledge touching the statutory law of the state of Pennsylvania on the subject of games of chance, or that they were prohibited in that jurisdiction; that the First National Bank of Binghamton became the first owners of all the notes mentioned in the mortgage,—the owners at their inception; that the First National Bank of Binghamton had no knowledge whatever at any time that the money loaned by it on these notes, or notes and mortgage, was to be used for the alleged purposes; that there is no sufficient evidence to support a finding that either Wheeler or Weir, at the time of their indorsement of the first three notes, dated December 18, 1896, had any knowledge that the avails of these notes, or any part of such avails, were to be used in aid of prohibited gambling games; that there is sufficient proof to support a finding that both Wheeler and Weir, at the time they indorsed the $800 note on February 1, 1897, knew that the purpose of the proposed loan was to obtain money to be used in the conduct of gambling games at the Manhattan Club in Scranton, Pa. As we have seen, however, these indorsers acted only as agents of the borrowers, and their knowledge is not to be imputed to the bank where the loan was negotiated. In the hands of the bank the notes and mortgage were free from all taint suggested by this allegation. In the hands of Wheeler and Weir, to the extent, at least, of the first three notes, the mortgage was equally free from all such taint; and this seems to dispose of this remaining charge against the validity of the mortgage in

the hands of the present owners. At the time of the commencement of this action the interest of the bank in the mortgage was at least to the extent of the $800 note and interest thereon. The other three notes do not appear to have been paid by the makers or by the mortgagor. If paid by any one, they were presumably paid by the indorsers, Wheeler and Weir, or by one of them; and to the extent of such payment the indorser, being both or one of the mortgagees named in the mortgage, are owners of the mortgage, with a right to join with the bank in proceedings to foreclose. There is no allegation in the complaint, and no proof, that the mortgage was being foreclosed for too large a sum; only allegations that the mortgage was void at its inception on the grounds stated. The plaintiff failed to establish his alleged cause of action, and the complaint was properly dismissed.

Judgment affirmed, with costs. All concur in result, except PARKER, P. J., who dissents.